1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CONSTRUCTION LABORERS TRUST            Case No. 1:24-cv-00466-CDB
     FUNDS FOR SOUTHERN CALIFORNIA
12   ADMINISTRATIVE COMPANY,                FINDINGS AND RECOMMENDATIONS TO
                                            GRANT PLAINTIFF'S MOTION FOR
13                    Plaintiff,            DEFAULT JUDGMENT

14         v.                               (Doc. 16)

15   JERRY MICHAEL FUENTEZ,                 ORDER DIRECTING PLAINTIFF TO EFFECT
                                            SERVICE
16                    Defendant.
                                            **14-DAY DEADLINE**
17

18

19

20         Pending before the Court is the motion for default judgment by Plaintiff Construction

21   Laborers Trust Funds for Southern California Administrative Company ("Plaintiff") against

22   Defendant Jerry Michael Fuentez ("Defendant"), filed February 26, 2024.  (Doc. 16).  Defendant

23   did not file an opposition to Plaintiff's motion and the deadline to do so has expired.  The Court

24   convened for a hearing on the motion on June 12, 2024.  (Doc. 30).  Counsel Natalia Bautista

25   appeared on behalf of Plaintiff and Defendant did not appear.  *Id*.  At the Court's direction

26   following the hearing, on June 27, 2024, Plaintiff filed a supplemental briefing in support of its

27   pending motion for default judgment.  (Doc. 33).

28

1   Having considered the moving papers, the declarations, and exhibits attached thereto, the

2   arguments and testimony presented at the hearing, the supplemental briefing, as well as the

3   Court's file, the Undersigned issues the following findings and recommendations that Plaintiff's

4   motion for default judgment be GRANTED.

5   **Background**

6   **A. Plaintiff's Allegations**[1]

7   Plaintiff is an administrator of and agent for collection for a fiduciary to, and brings this

8   action on behalf of, the following employee benefit plans (collectively, the "Trust Funds"):

9   Laborers Health and Welfare Trust Fund for Southern California; Construction Laborers Pension

10   Trust for Southern California; Laborers Annuity Plan for Southern California; Laborers Vacation,

11   Holiday and Sick Pay Trust Fund; Laborers Training and Re-Training Trust Fund for Southern

12   California; Fund for Construction Industry Advancement; Center for Contract Compliance;

13   Laborers Contract Administration Trust Fund for Southern California; Laborers' Trusts

14   Administrative Trust Fund for Southern California; and Southern California Partnership for Jobs

15   Trust Fund.  (Docs. 1 at ¶ 2; 16-2 at ¶¶ 3, 16).

16   The Trust Funds are express trusts created by written agreement, an employee benefit plan

17   within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"),

18   Section 3(3), 29 U.S.C. § 1002(3), and multi-employer plans within the meaning of ERISA

19   Section 3(37)(A), 29 U.S.C. § 1002(37)(A).  (Doc. 1 at ¶ 2).  Each of the Trust Funds exist

20   pursuant to ERISA and Section 302 of the Labor Management Relations Act ("LMRA"), 29

21   U.S.C. § 186.  *Id*.  The employee benefit plans provide employees with fringe benefits, including

22   but not limited to health insurance, pensions, and vacation pay.  (Doc. 16-2 at ¶ 5).

23   Defendant is an individual residing in Bakersfield, County of Kern, California, doing

24   business as a construction contractor in an industry affecting interstate commerce under the

25   fictitious business name "Kern County Custom Concrete."  (Doc. 1 at ¶ 4).  At all times since at

26   

---

27   [1]  Plaintiff's allegations are accepted as true for purposes of the motion.  Fed. R. Civ. P.
8(b)(6); *see NewGen, LLC v. SafeCig, LLC*, 840 F.3d 606, 617 (9th Cir. 2016) ("[U]pon default
the factual allegations of the complaint, except those relating to the amount of damages, will be
28   taken as true.") (internal quotation marks and citations omitted).

least November 15, 2019, through the filing of the complaint, Defendant was bound to certain collective bargaining agreements of the Southern California District Council of Laborers and its affiliated local unions ("Laborers Union").  (Docs.1 at ¶ 5; 16-2 at ¶ 19).  These collective bargaining agreements are "known as the Construction Master Labor Agreements, including one known as the Southern California Master Labor Agreement."  *Id*.  "Pursuant to the Construction Master Labor Agreements…[Defendant] became—bound to the terms and conditions of the various trust agreements ("Trust Agreements") that created each of the Trust Funds."  *Id*. at ¶ 6.

Specifically, Defendant executed a "short-form agreement" letter with the Laborers Union identifying certain types of work expressly covered by the Construction Master Labor Agreements.  (Docs. 1 at ¶ 5; 16-11; 16-2 at ¶ 19).  The letter also identified work to be covered by Defendant in addition to the work expressly covered by the Construction Master Labor Agreements.  (Doc. 1 at ¶ 5).

Under the terms of the Constructive Master Labor Agreements, the side letter, and the Trust Agreements (collectively, the "Agreements"), Defendant was required to submit monthly fringe benefit contributions ("Monthly Contributions") to the Trust Funds for all hours paid for or worked by his employees who perform work covered by the Agreements ("Covered Work").  (Docs. 1 at ¶ 7; 16-3).  Further, under the terms of the Agreements, Defendant was required to submit to the Trust Funds monthly reports, itemized by project, listing the names of their employees who performed Covered Work, their Social Security numbers, the hours of work performed and/or paid, and the resulting Monthly Contributions due to them ("Monthly Reports").  (Docs. 1 at ¶ 8; 16-5).  The Agreements require Defendant to maintain records sufficient for the Trust Funds to verify proper Monthly Reporting.  (Doc. 1 at ¶ 13).  The Trust Funds rely on Monthly Reports to determine the amount of Monthly Contributions Defendant must submit.  *Id*. at ¶¶ 8, 13.

The Agreements provide for the payment of interest on delinquent Monthly Contributions from the date due at a rate set by the trustees of the Trust Funds.  *See id*. at ¶ 9 ("The trustees have set that rate at five percent").  The Agreements also provide for the payment of liquidated damages for each month that Monthly Contributions or Monthly Reports for each Trust Fund are

delinquent.  (Doc. 1 at ¶ 9; 16-9).  The liquidated damages amount to "twenty percent (20%) of the delinquent Monthly Contributions due to the Trust Fund or $25, whichever is greater (except with respect to the Laborers Contact Administration Trust Fund for Southern California, which assesses liquidated damages at the greater of [ten percent (10%) or $20]."  (Doc. 1 at ¶ 9).  Additionally, the Agreements require Defendant to pay fees for the submission of dishonored checks.  *Id.*

Next, the Agreements require Defendant to subcontract Covered Work only to entities that are signatories to a Construction Master Labor Agreement applicable to the work performed.  (Docs. 1 at ¶ 11; 16-6).  The Agreements also require Defendant to not subcontract Covered Work to entities that are delinquent to the Trust Funds.  (Docs. 1 at ¶ 12; 16-7).

Separately, the Agreements provide the Trust Funds with specific authority to examine the payroll and business records of Defendant to determine whether he reported all hours paid for or worked by employees who perform Covered Work.  (Docs. 1 at ¶ 13; 16-8).  The Trust Funds have delegated the authority to perform such audits to Plaintiff.  (Docs. 1 at ¶ 13; 16-2 at ¶ 16).  The Agreements provide Defendant must pay the Trust Funds' audit fees if he is delinquent to the Trust Funds and "to pay the Trust Funds' attorneys' fees and costs of litigation to enforce the Agreements' foregoing terms, including the Monthly Contribution, Monthly Reporting, subcontracting, and audit provisions."  (Docs. 1 at ¶¶ 13-14; 16-10).

According to Plaintiff's papers filed in support of its motion for default judgment, from November 2019 through February 2021, Defendant submitted Monthly Reports to the Trust Funds.  (Doc. 33-9 at ¶ 11).  In February 2021, Amy Vong, a field auditor for Plaintiff, was assigned to conduct an audit of Defendant's records to verify his Monthly Reports, determine if any hours worked by laborer employees were not accurately reported, and determine amounts owed on projects worked on by Defendant.  *Id.* at ¶¶ 2, 8, 11.  Ms. Vong communicated with Defendant's bookkeeper, Amy Martin, to obtain Defendant's records.  *Id.* at ¶ 12.  Ms. Vong reviewed payroll records, tax records, and job listing records covering the audit period, November 2019 through February 2021.  *Id.* at ¶¶ 12-13.  Defendant only provided cash disbursement

records for the period of November 2019 through December 2020.  *Id.* at ¶ 12.  Plaintiff requested the missing records, but the records were not produced.  (Doc. 16-2 at ¶ 21.C).

From this partial audit of Defendant's records, Ms. Vong produced a report in May 2021, that concluded:

> (1) Defendant's Monthly Records did not reflect all hours worked by Defendant's employees, (2) Defendant did not pay fringe benefits directly to the employees, nor did he pay the fringe benefits to the Trust Funds for all hours worked, (3) the employees worked more hours than listed in Defendant's contribution reports, (4) Defendant's payroll records confirmed the hours worked and wage rates paid during the audit period, and (5) Defendant subcontracted work for which contributions were not paid.

*Id.* at ¶¶ 14-15; *See* (Doc. 16-2 at ¶ 21.C) ("The audit disclosed a total of one thousand six hundred and ninety-three, [1,693.29] hours worked by laborers were not reported to the Trust Funds nor were contributions paid on their behalf.").

Ms. Vong noted her report covered the time period of November 1, 2019, through February 28, 2021, and Defendant had submitted late reports and/or reports without money after the audit period and that therefore, Defendant "became liable for additional amounts than those reflected" in her audit.  (Docs. 33-9 ¶ at 15; 16-2 at ¶ 20) ("The Trust Funds have not audited [Defendant] for any month after February 2021 and additional amounts might be due for subsequent months.").  Further, Defendant failed to submit any reports or contributions to the Trust Funds "for the months of December 2021 through the present."  (Doc. 16-2 at ¶ 20).

Plaintiff also alleges that the failure of Defendant to pay Monthly Contributions when due caused damages to the Trust Funds and its participants that "are difficult to quantify."  (Doc. 1 at ¶ 10).  Specifically, Plaintiff asserts:

> "Apart from the fees and costs incurred in litigation, the harm caused includes, but is not limited to, the administrative costs of processing and collecting delinquencies, the costs of adjusting benefit credits and notifying participants, the additional burden placed on contractors who faithfully pay their contributions, and the burden upon participants and beneficiaries who may be unable to qualify for benefits they may have otherwise been entitled to had it not been for the delinquency of their employer."

*Id.*  Plaintiff contends that the purpose of the liquidated damages provision of the Agreements was to compensate for this type of unquantifiable harm.  *Id.*  In light of Plaintiff's partial audit covering the months of November 2019 through February 2021, Plaintiff identified the following damages from Defendant's violations:

| | |
|---|---|
| Monthly Contributions: | $46,514.94 |
| Interest (through February 20, 2024) | $11,820.19 |
| Liquidated Damages: | $27,110.79 |
| Subcontracting Violations: | $31,852.28 |
| Audit Fees: | $2,200.00 |
| Total: | $119,498.20 |

(Docs. 16-2 at ¶ 21.E; 33-9 at ¶ 18).  This amount is slightly more than the total damages alleged in the complaint due to the amounts calculated for increased interest and subcontracting violations.  Plaintiff also requests attorney's fees in the amount of $37,775.50 and costs of $716.91.  (Doc. 33 at 8-9, 12).

**B. Procedural History**

On December 5, 2023, Plaintiff initiated this action against Defendant in the United States District Court Central District of California.  (Doc. 1).  Plaintiff raised the following claims for relief: (1) monetary damages due to employee benefit plans, (2) specific performance of the obligation to produce records for audit, and (3) injunctive relief compelling submission of fringe benefit contributions to employee benefit plans.  *Id.* at 7-16 (citing 29 U.S.C. §§ 185, 1132(a)(3), 1132(g)(2) and 1145).  Plaintiff also requests "reasonable attorneys' fees and costs of suit, as required by the Agreements and provided for under 29 U.S.C. § 1132(g)(1) and/or (g)(2)."  (Doc. 1 at 8-11, 15).

On January 18, 2024, Plaintiff filed an executed proof of service of summons of summons, complaint, and related documents on Defendant.  (Doc. 10).  Defendant did not make an appearance or timely respond to Plaintiff's complaint.  *See generally* (Doc.).  On February 12,

2024, Plaintiff filed a request for entry of default against Defendant.  (Doc. 13).  The following day, the Clerk of the Court entered default against Defendant.  (Doc. 14).  On February 13, 2024, the Honorable United States District Judge Fernando M. Olguin directed Plaintiff to file and serve a motion for default judgment.  (Doc. 15).

Plaintiff filed the instant motion for default judgment on February 26, 2024.  (Doc. 16). Defendant did not oppose or respond to the motion.  On April 18, 2024, Judge Olguin issued an order transferring this action to the Eastern District of California.  (Doc. 19).  Judge Olguin reasoned that, because the named defendant resides within the Eastern District of California and the conduct occurred in that District, the Eastern District is the proper venue for this action.  *Id.* at 2.  The following day, the case was transferred to this Court.  (Doc. 20).

On May 10, 2024, the Undersigned set a hearing on Plaintiff's motion for default judgment for June 12, 2024, and directed Plaintiff to serve on Defendant a copy of the minute order setting the hearing. (Doc. 27).  On May 14, 2024, Plaintiff filed proofs of service of docket entries 20-27, including the Undersigned's order setting the June 12, 2024, motion hearing. (Docs. 28-29).

A hearing on Plaintiff's motion was held on June 12, 2024.  (Doc. 30).  Counsel Natalia Bautista appeared on behalf of Plaintiff via videoconference.  *Id.*  Defendant did not make an appearance.  *Id.*  The Undersigned heard argument on Plaintiff's motion for default judgment and directed Plaintiff to file supplemental briefing in further support of the motion regarding the relief requested.  (Docs. 30-31).  Specifically, the Undersigned determined that Plaintiff's supporting declaration of Yvonne Higa (Doc. 16-2), in which Plaintiff sets forth its methodology for auditing records and computing Defendant's alleged delinquency, did not adequately explain the basis for the proffered calculations.  (Doc. 31 at 2).  Further, the Undersigned noted Plaintiff's request for attorney fees did not comply with E.D. Local Rule 293.  *Id.*

The Undersigned directed Plaintiff to serve on Defendant "a copy of [its] order and a copy of Plaintiff's supplemental briefing within three (3) days of the briefing's filing."  *Id.*  The Undersigned also directed Plaintiff to "file proof of service promptly thereafter."  *Id.*  On June 13,

7

2024, Plaintiff filed proof of service on Defendant of the Undersigned's order directing Plaintiff to submit supplemental briefing.  (Doc. 32).

On June 27, 2024, Plaintiff filed a supplement briefing on its motion for default judgment and a motion for attorneys' fees and costs in compliance with E.D. Local Rule 293.  (Doc. 33). Plaintiff also filed a proof of service on Defendant of the supplemental briefing and motion for attorneys' fees and costs.  *Id*. at 13.

As of the date of these findings and recommendations, Defendant has not made an appearance in this action and has filed no response and/or opposition to Plaintiff's motion for default judgment.

**Legal Standard**

As a general rule, "default judgments are ordinarily disfavored," as "[c]ases should be decided upon their merits whenever reasonably possible."  *NewGen, LLC*, 840 F.3d at 616 (quoting *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)).  Under Rule 55 of the Federal Rules of Civil Procedure, default judgment is a two-step process. *See Eitel*, 782 F.2d at 1471. Prior to the entry of default judgment, there must be an entry of default.  *See* Fed. R. Civ. P. 55. Upon entry of default, the factual allegations of the complaint, save for those concerning damages, are deemed to have been admitted by the defaulting party. Fed. R. Civ. P. 8(b)(6); *see Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

Allegations regarding damages are not taken as true and must be independently proven. *Geddes*, 559 F.2d at 560.  In addition, "facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment." *Alan Neuman Prods. V. Albrights*, 862 F.2d 1388, 1392 (9th Cir. 1988) (quoting *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)); *see DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (allegations that do no more than "parrot" the elements of a claim not deemed admitted).

A district court has discretion to grant or deny a motion for default judgment.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *see TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987) ("Rule 55 gives the court considerable leeway as to what it may require

as a prerequisite to the entry of a default judgment.").  The Ninth Circuit has set out seven factors to be considered by courts in reviewing a motion for default judgment: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."  *Eitel*, 782 F.2d at 1471–72.  In general, entry of default judgment is not appropriate where the second and third factors weigh against the plaintiff.  *See Mnatsakanyan v. Goldsmith & Hull APC*, No. CV 12–4358 MMM (PLAx),2013 WL 10155707, *10 (C.D. Cal. May 14, 2013) ("The fact that factors two and three weigh against the entry of default judgment is particularly significant, as courts often treat these as the most important factors.") (citing cases).

  "If the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the 'amount and character' of the relief that should be awarded." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (quoting 10A Charles Alan Wright *et al.*, Fed. Prac. and Proc. § 2688, at 63 (3d ed. 1998)).  However, courts may decline to enter default judgment if a party's claim is legally insufficient.  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *Aldabe*, 616 F.2d at 1092-93 ("Given the lack of merit in appellant's substantive claims, we cannot say that the district court abused its discretion in declining to enter a default judgment in favor of appellant").

**Discussion**

  Before it may evaluate the *Eitel* factors to determine whether a default judgment should be entered, the Undersigned must first determine whether the Court properly has jurisdiction in this matter.

**A. Jurisdiction**

  Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to that granted by Congress.  *United States. v. Summer*, 226 F.3d 1005, 1009 (9th Cir. 2000).  Here, the Court has subject-matter jurisdiction over this action pursuant to Sections 502(a)(3) & (g)(2)

and 515 of the ERISA, 29 U.S.C. §§ 1132(a)(3) & (g)(2) and 1145, and pursuant to Section 301 of the LMRA, 29 U.S.C. § 185.  *See* (Doc. 1 at ¶ 1).

///

**B. Procedural Requirements**

"A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared." Fed. R. Civ. P. 55.  Plaintiff through counsel has submitted a declaration stating upon information and belief that Defendant is neither a minor nor incompetent person requiring special service in accordance with Fed. R. Civ. P. 4(g).  (Doc. 16-14 at ¶ 4).  Further, counsel attests upon information and belief that Defendant is not serving with the armed forces of the United States and not entitled to the protections of the Soldier's and Sailor's Civil Relief Act of 1940.  (Docs. 16-14 at ¶ 4; 16-15).

As a general rule, the Court considers the adequacy of service of process before evaluating the merits of a motion for default judgment.  *J & J Sports Prods., Inc. v. Singh*, No. 1:13-cv-1453-LJO-BAM, 2014 WL 1665014, at *2 (E.D. Cal. Apr. 23, 2014); *see Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992) (if a party "failed to serve [defendant] in the earlier action, the default judgment is void and has no res judicata effect in this action.").  Service of the summons and complaint is the procedure by which a court having venue and jurisdiction of the subject matter of the suit obtains jurisdiction over the person being served.  *Mississippi Publ'g Corp. v. Murphree*, 326 U.S. 438, 444-45 (1946); *see Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) ("A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4.").

"Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Id.* (quoting *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984)).  However, "without substantial compliance with Rule 4, 'neither actual notice nor simply naming the defendant in the complaint will provide

1    personal jurisdiction.'" *Direct Mail*, 840 F.2d at 688 (quoting *Benny v. Pipes*, 799 F.2d 489, 492

2    (9th Cir. 1986)).

3         Under Rule 4(e), an individual may be served by: (1) delivering a copy of the summons

4    and the complaint to that person personally; (2) leaving a copy of each at the individual's

5    dwelling or usual place of abode with someone of suitable age and discretion who resides there;

6    or (3) delivering a copy of each to an agent authorized by appointment or by law to receive

7    service of process.  Fed. R. Civ. P. 4(e)(2).

8         Rule 4 also permits service on an individual in accordance with state law.  Fed. R. Civ. P.

9    4(e)(1).  California law permits substitute service by leaving a copy of the summons and

10   complaint at the defendant's usual place of abode (i.e., dwelling), usual place of business, or

11   usual mailing address (other than a U.S. Postal Service post office box).  Cal. Civ. Proc. Code §

12   415.20(b).  Copies of the summons and complaint must be left "in the presence of a competent

13   member of the household or a person apparently in charge of [the defendant's] office, place of

14   business, or usual mailing address," and copies must thereafter be mailed to the defendant at the

15   same address where the documents were left.  *Id.*

16        On January 7, 2024, Plaintiff, through a registered process server, served a copy of the

17   summons, complaint, and related documents on Defendant by substitute service.  (Doc. 10 at 1, 2,

18   4).  After three attempts of personal service, the process server left the documents with Ruben

19   Tinoco, a co-occupant of 4916 College Avenue Bakersfield, CA 93301, at 6:44 p.m.  *Id.* at 2, 4.

20   The process server declared that the documents were left "in the presence of a competent member

21   of a household, at least 18 years of age, who was informed of the general nature of the papers."

22   *Id.*  Copies of the documents were also mailed by first-class mail, postage prepaid, to the same

23   address on January 8, 2024.  *Id.* at 4.  As discussed above, Plaintiff also served Defendant with

24   relevant documents throughout these proceedings.  (Docs. 28-29, 32, 33 at 13).

25        Based on the foregoing, the Undersigned concludes the Court has jurisdiction over

26   Defendants.

27   ///

28

11

**C. Evaluation of the *Eitel* Factors in Favor of Default Judgment**

For the reasons discussed herein, the Undersigned finds that the *Eitel* factors weigh in favor of granting default judgment.

**1. Possibility of Prejudice to Plaintiff**

The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered, and such potential prejudice to the plaintiff weighs in favor of granting a default judgment. *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover against that defendant. *Id*.

Here, Plaintiff would be prejudiced if default judgment were not granted. Plaintiff filed the complaint against Defendant on December 5, 2023 (Doc. 1), and properly served Defendant shortly after initiating this action. (Doc. 10). Defendant has failed to respond to Plaintiff's complaint. Thus, the present litigation cannot move forward. Absent entry of a default judgment, Plaintiff will be unable to recover the delinquent contributions Defendant owes and will likely suffer prejudice. Specifically, as alleged in the complaint, Defendant's delinquencies cause harm in the form of, among other things, administrative costs and the burden upon participants and beneficiaries who may be unable to qualify for benefits on account of Defendant's delinquencies. *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1007 (C.D. Cal. 2014) (finding the plaintiff would suffer prejudice absent entry of a default judgment because of the defendant's unwillingness to cooperate and defend against the claim); *e.g.*, *Constr. Laborers Trust Funds for S. Cal. Admin. Co. v. Sunquest Gen. Eng'g, Inc.*, No. CV 21-9477 FMO (JPRx), 2023 U.S. Dist. LEXIS 197290, at *8 (C.D. Cal. Nov. 2, 2023) ("[N]ot only the Trust Funds, but also their participants are harmed" because defendant's delinquencies "can result in the denial of benefit to participants, including the loss of health and vacation pay."). Accordingly, this factor weighs in favor of default judgment.

**2. Merits of Plaintiff's Claims and the Sufficiency of the Complaint**

The second and third *Eitel* factors call for an analysis of the causes of action. *Eitel*, 782 F.2d at 1471–72; *see Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal.

2010) (under an *Eitel* analysis, the second and third factors are often analyzed together); *Mnatsakanyan*, 2013 WL 10155707, at *10 (noting that courts often treat these two factors "as the most important" in an *Eitel* analysis).

Plaintiff first asserts Defendant breached his duty under the Agreements.  (Docs. 1 at 7; 16-1 at 13).  To state a claim for breach of a written collective bargaining agreement, the plaintiff must allege elements similar to that of a common law breach of contract claim.  *SEIU United Healthcare Workers-W. v. Los Robles Reg'l Med. Ctr.*, 812 F.3d 725, 732 (9th Cir. 2015).  Under California law, "the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse of nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."  *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

Here, Plaintiff has sufficiently alleged a claim for breach of contract.  Defendant was a full signatory to the Construction Master Labor Agreements through his execution of the "short-form agreement" on November 15, 2019.  *See* (Docs. 1 at ¶¶ 5-6; 16-11).  These documents establish the existence of a contract pursuant to which Defendant was obligated to perform.  Next, Defendant breached his obligation when he failed: (1) to submit all required Monthly Contributions to the Trust Funds, (2) to provide accurate monthly reports, and (3) engaged in subcontracting violations.  (Docs. 1 at ¶¶ 16, 23; 16-2 at ¶ 21.A to 21.E).  Lastly, Plaintiff alleges that it suffered damages as a result of Defendant's breach including, "unpaid Monthly Contributions", liquidated damages, interest, and fees.  (Docs. 1 at ¶¶ 16-18, 26; 16-2 at ¶¶ 21.C, 21.E; 33-9 at ¶¶ 15-18).  Therefore, Plaintiff has sufficiently alleged a breach of contract claim.  *E.g.*, *Applied Merch. Sys. W. Coast, Inc. v. HRVA Broadway Bus Tours, LLC*, No. 2:13-cv-080240BR) (PLAx), 2014 WL 12675008, *3-4 (C.D. Cal. Feb. 24, 2014) (breach of contract claim sufficiently alleged in granting default judgment).

Plaintiff also raises claims under ERISA.  Section 515 of ERISA, 29 U.S.C § 1145, provides:

> "Every employer who is obligated to make certain contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall,

to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or agreement."

29 U.S.C. § 1145.  In other words, Section 1145 creates a federal cause of action against employers who do not make timely contributions to employee benefit plans and that fail to adhere to preexisting obligations created under the collective bargaining agreement.  *See Trustees of Screen Actors Guild-Producers Pensions & Health Plans v. NYCA, Inc.*, 572 F.3d 771, 776 (9th Cir. 2009) (authorizing a plan fiduciary to bring a civil action to enforce a collective bargaining agreement).

Here, Plaintiff alleges that Defendant was obligated to make contributions under the terms of a collective bargaining agreement that he entered into on November 15, 2019.  (Doc. 1 at ¶¶ 5-7).  Further, the collective bargaining agreement set forth additional obligations Defendant was bound to follow.  *Id*. at ¶¶ 8, 11-12.  As discussed above, Defendant failed to provide Monthly Contributions and Monthly Reports and engaged in subcontracting violations.  Thus, the Undersigned finds Plaintiff has sufficiently set forth a claim for relief under Section 515 of ERISA.  Further, Plaintiff's declarations in support of the motion for default judgment (Docs. 16-2; 33-9) corroborate the merits of Plaintiff's substantive claims.  Thus, the second and third *Eitel* factors favor default judgment.

**3.  The Sum of Money at Stake in the Action**

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176.  The amount at stake must not be disproportionate to the harm alleged.  *See U.S. E.E.O.C v. Elite Wireless Grp., Inc.* No. 2:19-cv-02187-MCE-CKD, 2024 WL 913837, at *5 (E.D Cal. Mar. 4, 2024), *F&R adopted* 2024 WL 1765044 (Apr. 24, 2024).  Default judgment is generally disfavored when the sum of money at stake is either too large or unreasonable in light of a defendant's actions.  Generally, courts have found that this factor presents no barrier to default judgment even when millions of dollars were at stake so long as the potential damages were proportional to the harm alleged.  *Global Commodities Trading Group, Inc., et al. v. Beneficio De*

14

*Arroz Choloma, S.A., et al.*, No. 2:16-cv-1045-TLN-CKD, 2022 WL 1439499, at *5 (E.D. Cal. May 6, 2022) (citations omitted), *F&R adopted*, 2022 WL 2818658 (Jul. 19, 2022).

Here, Plaintiff seeks a monetary award of $119,4820 in Monthly Contributions, interest, audit fees, subcontracting violations, and liquidated damages against Defendant.  (Docs. 33 at 12; 33-15 at 2).  On winning an action to recover delinquent contributions under 29 U.S.C. § 1145, ERISA mandates that a court award:

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—
    a.  interest on the unpaid contributions, or
    b.  liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D)  reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) Such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).  These damages are "mandatory and not discretionary."  *Nw. Adm'rs. Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996) (quotation and citation omitted).  However, "[t]o be entitled to a mandatory award under § 1132(g)(2), the following three requirements must be satisfied: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award."  *Id.*

Here, Plaintiff has pled sufficient facts to establish a claim for an award under § 1132(g).  First, Defendant was delinquent at the time the complaint was filed.  *See* (Doc. 1 at ¶¶ 16, 23-24) ("[Defendant] has failed to timely submit Monthly Contributions due by it to the Trust Funds…[Defendant] has repeatedly failed to submit Monthly Reports and Monthly Contributions to the Trust Funds as required by the Agreements…By reason of the employer's failure to comply with its Monthly Reporting and Contribution obligations, the trust funds, its participants and/or its beneficiaries have suffered and will continue to suffer hardship and actual and impending irreparable injury and damage[.]"); *see also* ((Doc. 16-2 at ¶ 20) (Defendant failed to submit any

1  reports or contributions to the Trust Funds "for the months of December 2021 through the present
2  [*e.g.*, February 26, 2024].").

3        Second, Plaintiff seeks judgment against Defendant through the instant motion.  (Doc.
4  16).  Third, Plaintiff has sufficiently alleged that the Agreements provide for its requested relief.
5  As discussed above, the Agreements provide that Plaintiff may recover unpaid contributions
6  (Docs. 1 at ¶¶ 7, 11-12; 16-3; 16-5; 16-6; 16-7), interest (Docs. 1 at ¶ 9; 16-9), liquidated
7  damages (*id.*), audit fees (Doc. 1 at ¶ 13; 16-8), and attorney's fees and costs (Docs. 1 at ¶ 14; 16-
8  10).  Therefore, Plaintiff is entitled to the types of monetary relief it requests.

9        Having concluded that the requested relief is appropriate, the Undersigned "must
10  determine the propriety of the monetary amount" that Plaintiff seeks.  *N. Cal. Glaziers Pension*
11  *Trust Fund*, No. C 11-0966 CW (MEJ), 2011 WL 5974618, at *7 (N.D. Cal. Oct. 17, 2011).  As
12  discussed above, Plaintiff has produced sufficient evidence to support its claim for unpaid
13  contributions ($46,514.94) and subcontracting violations ($31,852.28) through the declarations of
14  Ms. Yvonne Higa and Ms. Vong's declarations (Docs. 16-2; 33-9), and Plaintiff's attached
15  financial exhibits (Docs. 16-12; 16-13; 33-11; 33-12; 33-13; 33-14).

16        As for interest, "ERISA provides that interest on unpaid contributions shall be determined
17  by using the rate provided for in the plan or, if none, the rate prescribed under [section 6621 of
18  Title 26]."  *N. Cal.-N. Nev. Sound & Commc'n Emp. Ben. Tr. Funds v. Anderson Audio Visual-*
19  *San Francisco, Inc.*, No. C-06-02700 RMW, 2007 WL 602237, at *3 (N.D. Cal. 2007); 29 U.S.C.
20  § 1132(g)(2)(E).  Here, Plaintiff has established that the relevant agreements set an interest rate of
21  five percent (5%).  *See* (Doc. 16-2 at ¶ 14) (The trustees have set that rate at five percent above
22  the variable prime rate set by the Federal Reserve Board of San Francisco, California).   However,
23  Plaintiff's pleadings reflect a discrepancy with respect to the interest calculated.  Specifically,
24  although Ms. Higa attests that the total interest on Defendant's delinquency was calculated as
25  $11,820.19 (Doc. 16-2 at ¶ 21.E(3)), the supporting spreadsheet shows a calculation of
26  $17,602.71 (Doc. 16-13).  *Cf.* Doc. 33 (arguing that interest is calculated at $17,602.71) *with* Doc.
27  33-9 at ¶ 18 (attesting that interest is calculated at $11,820.19).

28

Next, Plaintiff requests liquidated damages in the amount of $27,110.79.  (Doc. 33-9 at 9). As noted above, 29 U.S.C. § 1132(g)(2)(C) provides that courts shall award "liquidated damages provided for under the plan in an amount not in excess of 20 percent…of the amount [of unpaid contributions] determined by the court[.]"  Plaintiff asserts "[f]or each Trust Fund separately, liquidated damages are assessed on unpaid and late paid Monthly Contributions in the amount of $25 or twenty percent (20%) of the delinquent Monthly Contributions, whichever is greater (except with respect to the Laborers Contract Administration Trust Fund for Southern California, for which liquidated damages are assessed at the greater rate of $20 or ten percent (10%))."  (Doc. 16-2 at ¶ 14).

Like its pleadings with respect to interest, Plaintiff's pleadings with respect to liquidated damages alternatively estimate that liquidated damages are either $30,512.93 (*id.* at ¶ 21.C) or $27,110.79 (*id.* at ¶ 21.E(3)).  Further, Plaintiff does not indicate if it assessed the unpaid and late paid Monthly Contribution in the amount of $25 or 20%.  Plaintiff fails to identify "whichever is greater."  Likewise, Plaintiff fails to indicate with respect to the Laborers Contract Administration Trust Fund for Southern California whether liquidated damages were assessed at $20 or 10%.  In any event, Plaintiff's request for liquidated damages appears to exceed 20% of the amount of outstanding contributions.  Specifically, Plaintiff's request for the lower of the two calculations ($27,110.79) seemingly amounts to 34.59% of Plaintiff's request for Monthly Contributions and Subcontracting violations.

Plaintiff requests $2,200 in audit fees.  (Doc. 16-2 at ¶ 21.3).  Section 1132(g)(2)(E) "affords the court the opportunity to award such other legal or equitable relief as the court deems appropriate."  *Operating Eng'rs Pension Tr. v. A-C Co.,* 859 F.2d 1336, 1343 (9th Cir. 1988). Courts typically award audit fees when the underlying agreements provide for such fees in a collection action.  *See Trs. Of S. Cal. IBEW-NECA Pension Plan v. Gartel Corp.*, No. 2:11-cv-5929-ODW(SHx), 2013 WL 1703060, at *4 (C.D. Cal. Apr. 19, 2013) (awarding audit fees because "the parties agreed that a delinquent contractor would pay audit fees incurred by the trustees in a collection action").  Here, the Agreements provide that "[w]here an audited employer is delinquent, it is required to pay the Trust Funds' audit fees."  (Docs. 16-2 at ¶ 12; 16-8).

17

1   Plaintiff demonstrates how the Trust Funds incurred $2,200 in audit fees (27.5 hours work x $80

2   hourly rate).  (Doc. 16-2 at ¶ 21.E(3).  Thus, Plaintiff is entitled to its requested audit fees.

3       Accordingly, the money sought by Plaintiff is proportionate to the harm caused by

4   Defendants, and this factor weighs in favor of granting default judgment.  However, given the

5   discrepancies noted above with respect to Plaintiff's calculation of interest and liquidated

6   damages, the Undersigned will recommend no recovery for interest and liquidated damages given

7   Plaintiff's failure to carry its burden of demonstrating to the Court's satisfaction the correct

8   amounts.  *E.g.*, *Walters v. Statewide Concrete Barrier, Inc.*, No. C-04-2559 JSW (MEJ), 2006

9   WL 252776, at *7 (N.D. Cal. Aug. 30, 2006) (declining to award ERISA plaintiff interest and

10  liquidated damages for failing to meet its burden of proof with respect to the amount of monetary

11  damages requested).

12      **4.  The Possibility of a Dispute Concerning Material Facts**

13      "[A]llegations in a well-pleaded complaint are taken as true following the clerk's entry of

14  default."  *Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005).

15  Defendant did not answer the complaint or otherwise appear in this action.  *See generally* (Doc.).

16  Since Plaintiff's factual allegations are presumed true in this context, no factual dispute exists that

17  would preclude the entry of default judgment.  Thus, this factor weighs in favor of default

18  judgment.

19      **5.  Whether the Default was Due to Excusable Neglect**

20      Due process requires that interested parties be given notice of the pendency of the action

21  and be afforded an opportunity to present their objections before a final judgment is rendered.

22  *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).  Excusable neglect is

23  an equitable concept that takes account of factors such as "prejudice…, the length of the delay

24  and its potential impact on judicial proceedings, the reason for the delay, including whether it was

25  within the reasonable control of the movant, and whether the movant acted in good faith."

26  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).  However,

27  there is "little possibility of excusable neglect when the defendant fails to respond after being

28  properly served."  *Star Fabrics, Inc. v. SNS Fashion, Inc.*, No. 2:15-cv-01832-ODW (JEM), 2016

WL 11760189, at *3 (C.D. Cal. Jul. 15, 2016).  Because Defendant's default was due to his failure to respond despite being properly served, this factor also weighs in favor of default judgment.

### 6. The Strong Policy Favoring a Decision on the Merits

"Cases should be decided upon their merits whenever reasonably possible."  *Eitel*, 782 F.2d at 1472.  Defendant's failure to adequately answer Plaintiff's complaints and/or appropriately respond to the Court's orders and Plaintiff's pleadings make a decision on the merits "impractical if not impossible."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  Accordingly, this factor does not weigh against default judgment.

For the foregoing, the Undersigned finds that the *Eitel* factors on balance favor the entry of default judgment against Defendant.  Therefore, the Undersigned will recommend that the Court grant Plaintiff's motion for default judgment.

### D. Relief

Having determined that entry of default judgment is appropriate, the Undersigned must now consider Plaintiff's requested relief.  As noted above (*supra* 15-17), the Undersigned finds Plaintiff's monetary requests are appropriate with the exception of the amounts requested for interest and liquidated damages.

The Undersigned turns to Plaintiff's request for Defendant to comply with its obligation to produce records for audit.  (Doc. 16-1 at 18).  Where a trust fund has "the right to audit a contributing employer's records," the Court may order an audit.  *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491, 1496 (9th Cir. 1990); *see Central States Pension Fund v. Central Transport*, 472 U.S. 559, 581-82 (1985) (the right of ERISA employee benefit plans to enforce a power to audit pursuant to a trust agreement is well established).  ERISA provides that a court may award "such other legal or equitable relief as the court deems appropriate."  29 U.S.C. § 1132(g)(2)(E).  As noted above (*supra* 4), Plaintiff's right to compel an audit is also firmly established in the language of the Agreements.  The Agreements provided the Trust Funds with specific authority to examine the payroll and business records of Defendant to determine whether he reported all hours paid for or worked by employees who perform Covered

1   Work.  (Docs. 1 at ¶ 13; 16-8).  Therefore, the Court deems specific performance compelling an

2   audit of Defendant appropriate.

3        The Undersigned shall now address Plaintiff's request for litigation costs and attorney's

4   fees.  Plaintiff seeks litigation costs in the amount of $510.20 and attorney's fees in the amount of

5   $12,769.89.  Following its filing of supplemental briefing at the Court's direction (Doc. 33),

6   Plaintiff renews its request for costs and fees in the increased amounts of $716.91 in litigation

7   costs and $37,775.50 in attorney's fees.  Pursuant to 29 U.S.C. § 1132(g)(2)(D), costs of the

8   action are recoverable.  Here, Plaintiff's fees for filing, service of process, and record request

9   documents (Doc. 33-8 at 2) are reasonable and recoverable.  Therefore, the Undersigned shall

10  recommend Plaintiff's requested litigation costs be granted.

11       In an action under 29 U.S.C. § 1132(g)(2), attorney's fees are mandatory.  *Supra* 14.  Like

12  Plaintiff's request for monetary damages, the Undersigned finds a mandatory award of attorney's

13  fees is warranted.  *Id*. at 15.[2]  Therefore, the Undersigned must determine the amount of

14  attorney's fees to be awarded.

15       The Ninth Circuit has adopted the hybrid lodestar/multiplier approach as the proper

16  method for determining attorney's fees in ERISA actions.  *Van Gerwen v. Guarantee Mut. Life*

17  *Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000); *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173

18  (9th Cir. 1999); *see Ketchum v. Moses*, 24 Cal. 4th 1122, 1133-36 (2001) (discussing the lodestar

19  approach in California).  The Court arrives at the "lodestar" figure by multiplying the number of

20  hours reasonably expended by a reasonable hourly rate.  *McElwaine*, 176 F.3d at 1173.

21  Additionally, "[t]he party seeking fees bears the burden of documenting the hours expended in the

22  litigation and must submit evidence supporting those hours and the rates claimed."  *Welch v.*

23  *Metro Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007) (citing *Hensley v. Eckerhart*, 461 U.S.

24  424, 433 (1983)).

25       In the Ninth Circuit, "the determination of a reasonable hourly rate 'is not made by

26  reference to the rates actually charged by the prevailing party.'"  *Welch*, 480 F.3d at 946 (quoting

27       ────────────────
          [2]  As the Undersigned finds Plaintiff's request for attorney's fees is mandatory under 29
28  U.S.C. § 1132(g)(2), the Undersigned will not address Plaintiff's request for discretionary
    attorney's fees under 29 U.S.C. § 1132(g)(1).

*Mendenhall v. Nat'l Transp. Safety Bd.*, 213 F.3d 464, 471 (9th Cir. 2000)).  "Rather, billing rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity."  *Id.* (internal quotation omitted).

"Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and the rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."  *United Steelworkers of Am. V. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (citing *Chalmers v. City of L.A.*, 796 F.2d 1205, 1214 (9th Cir. 1986)).

Plaintiff seeks $37,775.50 in attorney's fees based on the work of five attorneys who expended over 85 hours in connection with the litigation of this action.  (Doc. 33 at 8-9).  In general, the first step in determining the lodestar is to assess whether the number of hours expended was reasonable.  *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000).  The Court does not necessarily require an exact minute-by-minute breakdown of an attorney's hours.  *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 451 (E.D. Cal. 2013) (the Court is not required to perform an "exhaustive cataloging and review of counsel's hours"); *see also Hensley*, 461 U.S. at 437, n. 12 ("[A]ttorneys are "not required to record in great detail how each minute of [their] time was expended.").  Rather, a plaintiff's attorneys can meet their burden by simply listing their hours and identifying the general subject matter of their time expenditures.  *Fischer*, 214 F.3d at 1121; *Hensley*, 461 U.S. at 437, n. 12.

Here, Plaintiff's attorneys have estimated and provided charts of the hours expended on this case.  (Docs. 33 at 8; 33-1; 33-2).  Specifically, Plaintiff claims Attorney Alexander Cvitan billed .3 hours, Attorney Natalia Bautista billed 47.5 hours, Attorney Michael Barth billed 28 hours, Attorney J. David Sackman billed 3.7 hours, and Peter Hutchinson billed 5.6 hours.  (Doc. 33-1 at 7).  The Undersigned has performed a detailed review of these records.

A fee applicant "should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 434.  A substantial portion of the attorneys' bill records (estimated 30 hours) is dedicated to the Central District's

1    transfer of this action to this Court and a proposed motion to transfer venue that was never filed.

2    (Doc. 33-2).  The Central District found that this Court was the proper venue because the named

3    Defendant resided in the Eastern District, and his conduct occurred in the Eastern District.  (Doc.

4    19 at 2).  Here, it is unclear to the Undersigned why Plaintiff's attorneys dedicated an estimated

5    31.1 hours to this issue, particularly given their representations that they have decades of

6    experience practicing.  (Doc. 33-1 at 2-3).  Although the investment of a small amount of time in

7    connection with the transfer order would be warranted, given the lack of novelty of the issue and

8    the clear authority of a district judge to transfer an action under these circumstances, the Court

9    finds that compensating any time more than five hours would be excessive.

10       Likewise, it is unclear why Plaintiff's attorneys' billing records indicate an estimated 9.1

11    hours were dedicated to the issue of magistrate jurisdiction.  (Doc. 33-2).  For example, on May

12    6, 2024, Plaintiff's attorney billed 3.1 hours for "[r]eview of notice of consent to magistrate [and

13    preparing] consent to magistrate form.  The Undersigned finds the hours billed on these issues are

14    unnecessary and/or excessive.  Therefore, the Undersigned would recommend reducing Mr.

15    Sackman's billed hours by 2, Mr. Barth's billed hours by 20, and Ms. Bautista's billed hours by 8.

16       The Court must also determine whether the proffered hourly rates are reasonable to

17    calculate the lodestar.  *Florida v. Dunne*, 915 F.2d 542, 545 n.3 (9th Cir. 1990).  The Supreme

18    Court has explained attorney fees are to be calculated with "the prevailing market rates in the

19    relevant community."  *Blum v. Stenson*, 456 U.S. 886, 895-96 n.11 (1984).  In general, the

20    "relevant community" for purposes of determining the prevailing market rate is the "forum in

21    which the district court sits."  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir.

22    2008).  Thus, when a case is filed in the Eastern District of California, this District "is the

23    appropriate forum to establish the lodestar hourly rate…"  *Jadwin v. County of Kern*, 767

24    F.Supp.2d 1069, 1129 (E.D. Cal. 2011).

25       The fee applicant bears the burden to establish that the requested rates are commensurate

26    "with those prevailing in the community for similar services by lawyers of reasonably comparable

27    skill, experience, and reputation."  *Blum*, 465 U.S. at 895 n.11.  The applicants meet this burden

28    by producing "satisfactory evidence—in addition to the attorney's affidavits—that the requested

1   rates are in line with those prevailing in the community for similar services by lawyers of

2   reasonably comparable skill, experience and reputation." *Id*.; *see Chaudhry v. City of Los*

3   *Angeles*, 751 F.3d 1096, 1110-11 (9th Cir. 2014) ("Affidavits of the plaintiffs' attorney[s] and

4   other attorneys regarding prevailing fees in the community ... are satisfactory evidence of the

5   prevailing market rate").

6        Here, Plaintiff's attorney requests that the Court find $545.00 to be a reasonable hourly

7   rate for Mr. Cvitan, $465.00 to be a reasonable hourly rate for Ms. Bautista, Mr. Sackman and

8   Mr. Hutchinson, and $400.00 to be a reasonable hourly rate for Mr. Barth.  (Doc. 33 at 12).  In

9   support of these rates, Plaintiff's attorney submits the curriculum vitae of the attorneys who

10  worked on this action, a survey of rates, and various case law applicable to Los Angeles and the

11  Central District of California.  (Docs. 33 at 10-12; 33-1 at 5-6, 10-11; 33-3; 33-4; 33-5; 33-6; 33-

12  7).

13       The Undersigned finds Plaintiff's attorneys have not carried their burden.  While

14  Plaintiff's attorney is correct that this case was originally filed in Los Angeles, where Plaintiff

15  customarily files suit (Doc. 33 at 10), the burden was to identify the prevailing market rate in

16  which the district court sits – here, the Eastern District of California, where the majority of labor

17  expended in litigating this action occurred.

18       The Undersigned has performed a comprehensive survey of fees awarded in the Eastern

19  District of California for ERISA actions.  *See Barboza v. Cal. Ass'n of Prof'l Firefighters*, No.

20  2:08-cv-0519-KJM-EFB, 2016 WL 3125996, at *9 (E.D. Cal. Jun. 3, 2016) (awarding over $500

21  to ERISA lawyers with over a decade of experience); *Sutton v. Metro. Life Ins. Co.*, No. 2:20-cv-

22  00698-KJM-CKD, 2022 WL 2177123, at *3 (E.D. Cal. Jun. 16, 2022) (adopting an unopposed

23  request for a $700 hourly rate for attorneys with extensive experience in ERISA but "noting only

24  that it is likely somewhat higher than those awarded in similar cases in this District before now.");

25  *Lasheen v. Loomis*, No. 2:01-cv-00227-KJM-EFB, 2016 WL 4161119, at *3 (E.D. Cal. Aug. 4,

26  2016) (finding a request for a $250 hourly rate from an experienced attorney in an ERISA action

27  reasonable, if not below market); *Bd. of Trs. v. McCaa*, No. 1:20-cv-01610-NONE-JLT, 2021

28  WL 3829212, at *5 (E.D. Cal. Aug. 27, 2021) (finding an hourly rate of $325 for an attorney with

more than 20 years of experience in an ERISA action reasonable) findings and recommendations adopted 2021 WL 4429453, (E.D. Cal. Sep. 27, 2021); *Monroe v. Metro. Life Ins. Co.*, No. 2:15-cv-02079-TLN-CKD, 2022 WL 624870, at *3 (E.D. Cal. Mar. 3, 2022) (finding hourly rates of $495 to $750 for an ERISA action reasonable); *Bd. of Trs. v. Shane Alexander Custom Tile & Stone, Inc.*, No. 2:14-cv-2740-MCE-KJN, 2015 WL 2018033, at *6 (E.D. Cal. May 1, 2015) (hourly rate of $285 per hour for an attorney with 39 years experience was reasonable in an ERISA action); *Aguilar v. Melkonian Enterprises, Inc.*, No. 1:05-cv-00032 OWW LJO, 2007 WL 201180, at *8 (E.D. Cal. Jan. 24, 2007) (awarding $495 per hour in a common-fund ERISA settlement). In light of this survey, the Undersigned finds Plaintiff's attorney's requested rates are reasonable.[3]

　　　　With the time adjustments set forth above, the adjusted lodestar totals $21,148.50.

| Timekeeper | Hours Billed (Adjusted) | Hourly Rate | Total |
|---|---|---|---|
| Alexander Cvitan | 0.3 | $545.00 | $163.50 |
| Natalia Bautista | 39 | $465.00 | $18,135.00 |
| Michael Barth | 8 | $400.00 | $3,200.00 |
| J. David Sackman | 1.7 | $465.00 | $790.50 |
| Peter Hutchinson | 5.60 | $465.00 | $2,604.00 |
| **Total** | **45.9** | - | **$24,893.00** |

　　　　Therefore, the Undersigned will recommend Plaintiff's requested attorney's fees be reduced to $24,893.00.

///

///

---

[3] Although Plaintiff identifies reduced hourly rates for Bakersfield practitioners based on a "variable table" (*see* Doc. 33-2 at 6 n.2), the Undersigned notes the cited source was published in mid-2019 and that the rates noted are not inconsistent with the rates recommended for approval herein.

**Conclusion, Order and Recommendation**

For the reasons discussed above, the Court DIRECTS the Clerk of the Court to assign a District Judge.

Further, the Court ORDERS Plaintiff to serve a copy of this order on Defendant and to file proof of service promptly thereafter.

Further, the Court RECOMMENDS the following:

1.  That Plaintiff's motion for default judgment (Doc. 16) be GRANTED;

2.  That JUDGMENT be entered in favor of Plaintiff Construction Laborers Trust Funds for Southern California Administrative Company and the Trust Funds it represents and against Defendant Jerry Michael Fuentez, an individual doing business as Kern County Custom Concrete;

3.  That Defendants pay Plaintiff $103,977.13 for unpaid fringe benefit contributions and related damages due for the period November 2019 through February 2021, consisting of a principal amount (monthly contributions and subcontracting violations) of $78,367.22, attorneys' fees of $24,893.00 and costs of $716.91;

4.  The monetary judgment issued in paragraph 3 above shall not, and does not, have *res judicata* effect, operate as a bar, or effect any other limitation of any right of the Trust Funds or any individual Trust Fund (including Plaintiff on behalf of the Trust Funds or any individual Trust Fund) to determine and collect any amounts due by Defendant for months after February 2021 under his name, the fictitious business name of Kern County Custom Concrete, or any other name;

5.  Defendant and his managing officers, managing employees, agents, and successors, as well as all those in active concert or participation with any one or more of them, shall submit to a full audit of Defendant for the period November 2019 through February 2021, and fully cooperate with Plaintiff and the Trust Funds with respect to the audit in order for them to determine the total amount due to the Trust Funds by Defendant and the hours of work performed by the Trust Funds' participants and any others entitled to credit toward fringe benefits from any one or more of the Trust Funds, and, specifically, to produce to

Plaintiff and the Trust Funds the following payroll and business records – and any other records determined by Plaintiff or the Trust Funds to be necessary to conduct a full audit – for inspection, examination and copying:

    a.  All of Defendant's payroll and employee records, as well as any other records that might be relevant to a determination of the work performed by Defendant, his employees, his subcontractors, his lower-tier subcontractors and the employees of Defendant's subcontractors and lower-tier subcontractors, including but not limited to payroll journals, employee earnings records, certified payroll records, payroll checkbooks and stubs, cancelled payroll checks, payroll time cards and state and federal tax returns (and all other state and federal tax records), as well as labor distribution journals and any other records that might be relevant to an identification of the employees who performed work for Defendant, his subcontractors or lower-tier subcontractors, or which might be relevant to a determination of the projects on which Defendant, his employees, his subcontractors, lower-tier subcontractors or the employees of his subcontractors or lower-tier subcontractors performed work, including any records that provide the names, addresses, Social Security numbers, job classification or the number of hours worked by any one or more employee;

    b.  All of Defendant's job files for each contract, project, or job on which Defendant, his employees, his subcontractors, his lower-tier subcontractors or the employees of his subcontractors or lower-tier subcontractors worked, including but not limited to all correspondence, agreements, and contracts between Defendant and any general contractor, subcontractor, owner, builder or developer, as well as all field records, job records, notices, project logs, supervisors' diaries and notes, employees' diaries and notes, memoranda, releases and any other records that relate to the supervision of Defendant's employees, his subcontractors, his lower-tier subcontractors or the employees of his subcontractors and lower-tier subcontractors, or the projects on which Defendant, his employees, his

1    subcontractors, his lower-tier subcontractors or the employees of his

2    subcontractors or lower-tier subcontractors performed work;

3    c.    All of Defendant's records related to cash receipts, including but not limited to

4    Defendant's cash receipts journals, accounts receivable journals, accounts

5    receivable subsidiary ledgers, and billing invoices for all contracts, projects, and

6    jobs on which Defendant, his employees, his subcontractors, his lower-tier

7    subcontractors or the employees of his subcontractors or lower-tier subcontractors

8    performed work;

9    d.    All of Defendant's bank statements, including but not limited to those for all

10    checking, savings and investment accounts;

11    e.    All of Defendant's records related to disbursements, including but not limited to

12    vendors' invoices, cash disbursement journals, accounts payable journals, check

13    registers, and all other records which indicate disbursements;

14    f.    All collective bargaining agreements between Defendant and any trade union, and

15    all records of contributions by Defendant to any trade union trust fund; and

16    g.    All records related to the formation, licensing, renewal, or operation of Defendant.

17    These findings and recommendations will be submitted to the United States district judge

18  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within 14 days after

19  being served with these findings and recommendations, the parties may file written objections

20  with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings

21  and Recommendations."  The parties are advised that failure to file objections within the specified

22  time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th

23  Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

24  IT IS SO ORDERED.

25    Dated:   **September 3, 2024**    _____

26    UNITED STATES MAGISTRATE JUDGE

27

28